UNITED STATES DISTRICT COURT
DISTRICT OF MASSSACHUSETTS

| | |
|---|---|
| JESSE ANDERSON,<br>    Plaintiff, | )<br>)<br>) |
| VS. | ) C.A. No. 1:20-cv-12203-RWZ<br>) |
| OFFICER NATHAN REID;<br>SERGEANT JOSEPH COTTER; and<br>TOWN OF SANDWICH,<br>    Defendants. | )<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

The Defendants, Nathan Reid and Joseph Cotter, are entitled to judgment as a matter of law based on the undisputed facts of this case.[1] Jesse Anderson ("Plaintiff") initiated a physical confrontation with his father and brother on January 6, 2018. When the Sandwich Police arrived responding to a 911 call from the Plaintiff's family, the Plaintiff repeatedly refused to comply with Officer Reid's orders and attempted to evade his potential arrest. More specifically, once Officer Reid found the Plaintiff in his running car, Officer Reid repeatedly asked him to turn off the car and get out. The Plaintiff repeatedly refused, moved his car, responded with profanities, and threatened Officer Reid asking him if he knew what "Fight or Flight" meant.

When he finally got out of his car, the Plaintiff continued to ignore Officer Reid's commands. Instead, the Plaintiff continued to shout profanities toward Officer Reid and headed for his parents' residence. By his own accounts, he was not going to listen to Officer Reid. Given the icy conditions of the driveway, Officer Reid quickly determined that attempting to physically take hold of or tackle the Plaintiff could cause significant injury because of the lack of footing and

---

[1] Following the stipulation of dismissal of Count III, no separate claims remain against the Town of Sandwich.

his size. Officer Reid made the reasonable and calculated decision to deploy his taser as opposed to physically restraining him due to the risk of injury given the Plaintiff's actions, threats, and the ice on the ground.

Once on the ground, the Plaintiff continued to actively resist by keeping his arms underneath his body and yell profanities at Officer Reid. At this time, Sergeant Cotter, who had been speaking with the Plaintiff's father and brother at the bottom of the long steep driveway, had reached the area of the backyard where the Plaintiff was located. The Plaintiff continued to yell obscenities and ignored numerous and repeated orders to give up his hands and stop resisting. As a result, Officer Reid deployed his Taser a second time. With that, the Plaintiff cooperated and gave up his hands to be cuffed. Critically, no Sandwich officer used any force after the Plaintiff was secured in handcuffs.

Accordingly, based on the undisputed facts as set forth in the accompanying Statement of Undisputed Material Facts, this Honorable Court should enter judgment for the Defendants on all the claims in the Plaintiff's Complaint, specifically: (I) Count I against Officer Reid alleging a Fourth Amendment Constitutional Violation for Excessive Force stemming from tasing the Plaintiff and; (II) Count II against Sergeant Cotter alleging Supervisory Liability for Officer Reid's Tasing.

## II.      STATEMENT OF FACTS

The undisputed facts relevant to the Defendants' Motion for Summary Judgment are set forth in their Local Rule 56.1 Statement of Undisputed Material Facts ("SUMF"), filed herewith.

## III.     STANDARD OF REVIEW

Summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and

that movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Walker v. President & Fellows of Harvard Coll.*, 840 F.3d 57, 61 (1st Cir. 2016). A genuine issue exists "if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party" and "[a] fact is material if it has the potential of determining the outcome of the litigation." *Farmers Ins. Exch. v. RNK, Inc.*, 632 F.3d 777, 782 (1st Cir. 2011).

In deciding a motion for summary judgment, the Court "read[s] the facts in the light most favorable to the non-moving party" and draws "all reasonable inferences in [that party's] favor." *Lachance v. Town of Charlton*, 990 F.3d 14 (1st Cir. 2021). Where there are no genuine issues of material fact, summary judgment should be granted if the opposing party's "evidence is merely colorable, or not significantly probative." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986) (internal citations omitted). The Court should ignore bald assertions and mere speculation as well as allegations that have been "conclusively contradicted by plaintiff['s] concessions or otherwise." *Chongris v. Bd. of Appeals*, 811 F.2d 36, 37 (1st Cir. 1987); *see also Cadle Co. v. Hayes*, 116 F.3d 957, 960 (1st Cir. 1997) ("A party faced with a properly documented summary judgment motion should not be able to keep his case on life support merely by hurling conclusory allegations in the movant's direction.").

As to issues on which the plaintiff has the burden of proof, the defendant need do no more than aver "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). The plaintiff must then adduce "specific facts establishing the existence of at least one issue that is both 'genuine' and 'material.'" *Sheinkopf v. Stone*, 927 F.2d 1259, 1261 (1st Cir. 1991) (citing *Anderson*, 477 U.S. at 248). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

## IV.    ARGUMENT: QUALIFIED IMMUNITY SHIELDS OFFICER REID AND SERGEANT COTTER FROM LIABILITY.

The Court should grant the Defendants' Motion for Summary Judgment and enter judgment favor of Officer Reid and Sergeant Cotter because the doctrine of qualified immunity shields them from liability.

Qualified immunity "shields officers from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *City of Tahlequah, Oklahoma v. Bond*, 142 S. Ct. 9, 11 (2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009)). Qualified immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson,* 555 U.S. at 231. In determining whether a defendant is protected by qualified immunity, the Court evaluates: "(1) whether the facts alleged or shown by the plaintiff make out a violation of a constitutional right; and (2) if so, whether the right was 'clearly established' at the time of the defendant's alleged violation." *Maldonado v. Fontanes*, 568 F.3d 263, 269 (1st Cir. 2009). The Court does not have to address these two prongs in order and may resolve the case exclusively with the second prong. *Pearson,* 555 U.S. at 231; *Eves v. LePage*, 927 F.3d 575, 584 (1st Cir. 2019).

Here, the undisputed evidence establishes Officer Reid's use of force was objectively reasonable and did not violate the Plaintiff's constitutional rights under the Fourth Amendment. Because Officer Reid's use of force was objectively reasonable, Sergeant Cotter is not liable under a Section 1983 Supervisory Liability theory. Notwithstanding the lack of a constitutional violation, Circuit precedent does not establish a Fourth Amendment violation in which police officers use a

4

taser against an individual suspected of a violent offense and is actively evading arrest. Therefore, Officer Reid and Sergeant Cotter are entitled to qualified immunity.

### A. Officer Reid's Use of Force Was Objectively Reasonable.

Officer Reid's did not violate the Plaintiff's Fourth Amendment constitutional rights to be free from excessive force because Officer Reid's use of his taser to apprehend the Plaintiff was objectively reasonable based on the totality of the circumstances.

Excessive force claims are evaluated under the Fourth Amendment's "objective reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 388 (1989); *Lachance v. Town of Charlton*, 990 F.3d 14, 20 (1st Cir. 2021). In determining whether the force used to effectuate a particular seizure is "reasonable," the Court carefully balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham,* 490 U.S at 396.

In its analysis, the Court considers the "*Graham* factors," which "requires consideration of the totality of the circumstances," including (1) "the severity of the crime at issue," (2) "whether the suspect pose[d] an immediate threat to the safety of the officers or others," and (3) "whether [the suspect was] actively resisting arrest or attempting to evade arrest by flight." *Lachance,* 990 F.3d at 20 (quoting *Gray v. Cummings*, 917 F.3d 1, 8 (1st Cir. 2019) and *Graham,* 490 U.S. 386 at 396). Importantly, "[t]he reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham,* 490 U.S at 396 ("[T]he right to make an arrest … necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.").

The Court's assessment must also account for the fact that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly

evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 205 (1st Cir. 1990) (same); *Kam-O'Donoghue v. Tully*, 2019 WL 4273686, \*7 (D. Mass. Sept. 10, 2019) (same). Additionally, the inquiry into "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them," is conducted "without regard to [the officers'] underlying intent or motivation." *Graham,* 490 U.S at 397; *see also Betts v. Brennan*, 22 F.4th 577 (5th Cir. 2022) (the Court also considered the speed with which an officer resorts to force is relevant in determining whether that force was excessive to the need; use of a taser as last resort was reasonable after suspect refused to obey several verbal commands). At the summary judgment stage, once the Court has identified the relevant facts and drawn all inferences in the non-movant's favor, the reasonableness of an officer's actions "is a pure question of law." *Scott v. Harris*, 550 U.S. 372, 382 n. 8 (2007).

Here, all the "Graham factors" weigh in favor of Officer Reid, supporting the conclusion that Officer Reid's use of force was objectively reasonable. *See Lachance,* 990 F.3d at 20. Officer Reid was responding to a domestic call in which the 911 Police Dispatcher told him, "it's been physical" and that the Plaintiff had been fighting with his parents and his brother. *See* SUMF, at ¶¶ 8 – 10, 12 – 14. He was also informed that the Plaintiff had a prior disorderly conduct charge, which would heighten any reasonable officer's concern for his safety and the safety of others. *See id.,* at ¶ 11. Plaintiff's family was also so concerned about the Plaintiff that they blocked him from exiting their property because they did not believe he should be driving. *See id.,* at ¶¶ 12, 22 – 24. They also called the police despite their own efforts to pin him down to the ground together. *See id.,* at ¶¶ 25, 29. As Richard Anderson explained, "Jesse shoved Caleb in the chest and Caleb

6

shoved him back. And then by that time I was over there, and so between Caleb and I, we **subdued** Jesse." *See id.,* at ¶ 29 (emphasis added).

On scene, Officer Reid observed the Plaintiff in a running car, in the backyard, behind 20 Grove Street, with his window down in the middle of winter. *See id.,* at ¶¶ 16, 21, 27. To Officer Reid, the Plaintiff appeared to have been in a fight and looked very angry, corroborating the dispatch he received for a domestic assault. *See id.,* at ¶¶ 8 – 14; 19 – 20; 28 – 29. Officer Reid ordered the Plaintiff to turn off his car, and he refused. *See id.,* at ¶¶ 30 – 31. Plaintiff agrees he did not get out of the car when he was ordered to do so and despite seeing a taser in Officer Reid's hands. *See id.,* at ¶¶ 31 – 34. Instead, the plaintiff continued to keep the car running, and shouted to Officer Reid things like, "Have you ever heard of de-escalation?" and "Do you know what fight or flight is?". *See id.,* at ¶¶ 32, 34. Officer Reid reasonably interpreted these statements as threats and an indication that the Plaintiff was not going to cooperate.

At some point, the Plaintiff moved his car in a manner that made everyone believe the Plaintiff was not going to comply with Officer Reid's orders. *See id.,* at ¶¶ 35 – 41. Officer Reid considered the Plaintiff's driving to be very dangerous and was worried the Plaintiff was going to hit someone. *See id.,* at ¶¶ 35 – 36. When the Plaintiff finally got out of the car, the Plaintiff was in a shirt and walking in slippers, and he continued to refuse Officer Reid's commands. *See id.,* at ¶¶ 42 – 43, 45 – 47. By Plaintiff's own admission, he was not going to listen to Officer Reid. *See id.,* at ¶¶ 47, 49, 53, 54 – 56, 58, 61. The Plaintiff then walked away from Officer Reid, despite Officer Reid's repeated orders to stop. *See id.,* at ¶¶ 61. At this point, Officer Reid knew that (1) the Plaintiff had just been in at least one fight with his father and brother; (2) the Plaintiff was acting irrationally by driving his car in the backyard, and by wearing slippers on the icy ground in the middle of winter without a coat; (3) the Plaintiff made comments to Officer Reid that heighted

his concern for his safety; (4) the Plaintiff used his car in an unsafe and threatening manner; and (5) the Plaintiff repeatedly refused to obey Officer Reid's lawful orders to stop by walking away. *See id.,* at ¶¶ 8 14, 16 – 21, 26 – 28, 30 – 62. The Plaintiff's repeated refusal to obey orders by walking toward the Anderson's home also made Officer Reid concerned, because Officer Reid did not know who was in the house and was concerned the Plaintiff was going to barricade himself inside. *See id.,* at ¶¶ 65. At that point, Officer Reid had probable cause to arrest the Plaintiff for assault, disorderly conduct, refusal to obey a police officer, and even for resisting arrest.[2]

A police officer may make a warrantless arrest or place a suspect in custody upon "probable cause." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979). "Probable cause exists when the facts and circumstances within the police [officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent person in believing that [the suspect] had committed or was committing an offense." *McCormack v. Town of Whitman*, 2013 WL 1187093, *7 (D. Mass. 2013) (quoting *United States v. Pardue*, 385 F.3d 101, 107 (1st Cir. 2004)). In determining whether an officer has "probable cause," the Court must view the circumstances "from the perspective of a reasonable person in the position of the officer." *Holder v. Town of Sandown*, 585 F.3d 500, 504 (1st Cir. 2009). Most importantly, "[p]robable cause requires only a *probability* that the [suspect] committed the crime." *Id.* (emphasis added). Certainty is not required. *See Acosta v. Ames Dep't Stores*, 386 F.3d 5, 11 (1st Cir. 2004) ("The test for probable cause does not require the officers' conclusion to be ironclad, or even highly probable. Their conclusion that probable cause exists need only be reasonable.") (internal quotation and citation omitted). Here, Officer Reid had probable cause to arrest the Plaintiff based upon the totality of

---

[2] See M.G.L ch. 90, § 25.

circumstances he confronted when was called to the Anderson residence observed corroborating evidence of the Plaintiff's dangerous behavior.

Thus, Officer Reid's use of a taser to effectuate an arrest (or to place the plaintiff in protective custody) at that point was reasonable. Officer Reid explained that he is a big guy and tackling the plaintiff, who was also a large man, to the ground on the very icy surfae would have likely resulted in significant injuries to himself and/or the Plaintiff. *See* SUMF, at ¶¶ 26, 68 - 72. Therefore, Officer Reid's attempts to bring the Plaintiff into custody using the initial taser was objectively reasonable as it was the least amount of force he could have used to effectuate the arrest and it was used after repeated attempts to apprehend the Plaintiff without any force.

After Officer Reid's initial tasing, the plaintiff continued to disobey Officer Reid's commands to give him his hands.[3] *See id.,* at ¶¶ 74 – 79. The Plaintiff had his hands under his body, preventing Officer Reid from handcuffing him. *See id.* Considering his continued resistance despite Officer Reid's continued patience, Officer Reid's second deployment of the taser, which was more than a minute after the initial deployment, was also reasonable. *See id.,* at ¶¶ 74 – 81. Moreover, Officer Reid's use of force was reasonably necessary to protect himself from the Plaintiff, who may have tried to commit an assault and battery on a police officer. *See* M.G.L. 265 § 13D.

The First Circuit has distinguished force used in arrests in which the plaintiff was violent and resisting with force used in arrests in which the plaintiff was not suspected violence and not

---

[3] Recently, the First Circuit affirmed the "segmented approach" in analyzing claims of excessive force "when circumstances relevant to the reasonableness inquiry changed between one use of force and another." *Lachance,* 990 F.3d at 25-26 (affirming the district court's granting of qualified immunity for "push" on summary judgment but reversing and remanding the court's granting of defendants' motion for judgment as a matter of law on other grounds regarding plaintiff's other Section 1983 claims and state law assault and battery claims). Here the Court may evaluate the two times Officer Reid used the taser separately, while simultaneously considering the totality of the circumstances.

resisting. *See Coiolino v. Gikas,* 861 F.3d 298, 303-05 (1st Cir. 2017) (collecting cases); *see also Taylor v. Moore,* 383 F.Supp.3d 91, 100 (D. Mass. 2019) (collecting cases). In *Coiolino,* the First Circuit held the officer violated the plaintiff's Fourth Amendment rights to be free from excessive force when the officer tackled the plaintiff to the ground in these circumstances. *Id.,* at 304. The evidence in *Coiolino* established that although the plaintiff denied one police command, the plaintiff was not suspected of a violent offense, did not attempt to flee, the officer did not perceive the plaintiff as a threat, the plaintiff was never given a chance to submit peacefully to arrest before significant force was used on him, and there was "no need to make 'split-second judgments' in response to 'tense, uncertain, and rapidly evolving circumstances.'" *Id.* (quoting *Graham*, 490 U.S. at 396). In so doing, the First Circuit recognized the distinguishable difference between the situation the officer faced in *Coiolino* with those in which officers "faced much more volatile and dangerous scenes" and "the persons against who force was used posed a greater threat to the safety of the officers." *Id.* at 304-05.

This Circuit has also recognized the 11th Circuit decision in *Draper v. Reynolds* in which the facts established "[f]rom the time Draper met [Officer] Reynolds at the back of the truck, Draper was hostile, belligerent, and uncooperative," and "repeatedly refused to comply with Reynolds's verbal comments." *See Parker v. Gerrish,* 547 F.3d 1, 11 (1st Cir. 2008) (citing *Draper v. Reynolds,* 369 F.3d 1270, 1278 (11th Cir. 2004) (holding the use of a taser to "effectuate [an] arrest" was reasonable when the individual was "hostile, belligerent, and uncooperative"). "Considering the persistent hostility, the court found that attempting an arrest and cuffing 'may well have, or would likely have, escalated a tense and difficult situation into a serious physical struggle.'" *Parker*, 547 F.3d at 11 (quoting *Draper*, at 1278). In contrast, the First Circuit held that the evidence supported finding that officer used excessive force when he deployed his

taser against plaintiff who was not suspected of a serious offense, complying with police commands, and gave himself up. *Parker*, 547 F.3d at 11.

Indeed, Officer Reid's interactions with the Plaintiff are distinguishable from the situation in *Coiolino* and *Parker*, and are more consistent with *Draper* because (1) the Plaintiff had been violent with his family members; (2) Officer Reid was concerned with the Plaintiff becoming violent again and perceived him as a threat to himself and to others; (3) the situation was rapidly evolving and volatile; and (4) despite numerous efforts to use verbal commands to control the situation, the Plaintiff refused to obey Officer Reid's commands. *See* SUMF*,* at ¶¶ 8 – 81. Even after the first tasing, the Plaintiff continued to resist apprehension by not giving his arms to be handcuffed. *See id.,* at ¶¶ 75 – 82.

Overwhelmingly, other Circuits have held an officer's use of a taser, similar to Officer Reid's use, was reasonable where the plaintiff resisted police apprehension for arrest or for a mental health evaluation. *See, e.g., Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (No constitutional violation during an arrest where officer first tased plaintiff from a few feet away and then used taser in drive-stun mode while grappling with the plaintiff); *Brossart v. Janke*, 859 F.3d 616, 625 (8th Cir. 2017) (use of a taser was a reasonable where plaintiff made two threats of violence to the law enforcement officers, repeatedly did not comply with the officer's orders to cooperate in a potentially criminal investigation, and then resisted being handcuffed when told he was under arrest); *Brown v. Cwynar*, 484 Fed.Appx. 676 (3d Cir. 2012) (the court affirmed a grant of summary judgment in favor of police officers who deployed a taser multiple times because the plaintiff in that case was tased once and continued to act uncooperatively); *Crowell v. Kirkpatrick,* 400 F. App'x 592, 595 (2d Cir. 2010) (summary judgment upheld; officers' use of stun guns were objectively reasonable and not excessive even though suspects were political protesters who were

not threatening the safety of any other person, but were trespassing and passively resisting arrest); *Hinton v. City of Elwood,* 997 F.2d 774, 781 (10th Cir. 1993) (approving the use a stun gun to overcome a suspect's resistance of arrest).

Because the Plaintiff actively resisted police apprehension for an assault immediately preceding the first and second tasings, Officer Reid's use of the taser was reasonable under the totality of the circumstances. Therefore, plaintiff's 4th Amendment claim against Officer Reid fails.

### B.  Sergeant Cotter is not Liable Under a Section 1983 Supervisory Liability Theory Because Officer Reid's Use of Force was Objectively Reasonable.

Plaintiff's attempt to hold Sergeant Cotter liable for Officer Reid's taser usage under a theory of supervisory liability should fail because Officer Reid's use of force was objectively reasonable.[4]

Supervisory liability under §1983 cannot be predicated on a respondeat superior theory, and instead must stem from the supervisor's own acts or omissions. *Seekamp v. Michaud*, 109 F.3d 802, 808 (1st Cir. 1997). Plaintiff must show an affirmative link between the constitutional violation and the supervisor's actions and omissions, "whether through direct participation or through conduct that amounts to condonation or tacit authorization" or "deliberate indifference." *Camilo-Robles v. Zapata*, 175 F.2d 41, 43 (1st Cir. 1999); *see also Pineda v. Toomey*, 533 F.3d 50, 53 (1st Cir. 2008). The mere fact that Sergeant Cotter was the superior officer responding to the scene does not equate to liability under Section 1983.

It is thus axiomatic that state actors cannot be held vicariously liable under Section 1983 for the actions of other state actors. *See Parratt v. Taylor*, 451 U.S. 527, 537 n.1 (1981). To succeed under a theory of supervisory liability under Section 1983, a plaintiff must prove (1) "one of the supervisor's subordinates abridged the plaintiff's constitutional rights," and (2) "the supervisor's

---

[4] It is undisputed that Sergeant Cotter did not use any force on the Plaintiff.

action or inaction was ***affirmatively linked*** to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference. *Guadalupe-Baez v. Pesquera*, 819 F.3d 509, 514–15 (1st Cir. 2016) (cleaned up and emphasis added). Therefore, "a supervisor may not be held liable under section 1983 on the tort theory of respondeat superior, nor can a supervisor's section 1983 liability rest solely on his position of authority." *Id.* at 515.

Although a plaintiff is not required to show a supervisor directly engaged in a subordinate's unconstitutional behavior, "the supervisor's liability must be premised on his own acts or omissions. *Id.* (citing *Camilo–Robles v. Hoyos,* 151 F.3d 1, 6–7 (1st Cir.1998) and *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 562 (1st Cir.1989)). "Mere negligence will not suffice: the supervisor's conduct must evince 'reckless or callous indifference to the constitutional rights of others.' " *Id.* (quoting *Febus–Rodríguez v. Betancourt–Lebrón*, 14 F.3d 87, 92 (1st Cir.1994)).

To succeed on a theory of deliberate indifference, the plaintiff must show "(1) 'that the officials had knowledge of facts,' from which (2) 'the official[s] can draw the inference' (3) 'that a substantial risk of serious harm exists.' " *Id.* (internal citations omitted). The plaintiff must then *also* show causation, which "contemplates proof that the supervisor's conduct led inexorably to the constitutional violation." *Id.* Noting the difficulty of the standard, the First Circuit suggested a plaintiff may prove causation by showing a supervisor's inaction despite a "known history of widespread abuse sufficient to alert a supervisor to ongoing violations." *Id.* (quoting *Maldonado–Denis v. Castillo–Rodriguez,* 23 F.3d 576, 582 (1st Cir.1994) (also calling into question the circuit case law on supervisory liability). "Isolated instances of unconstitutional activity" are insufficient to establish deliberate indifference. *Id.* Lastly, a supervisor must be on notice of the violation. *Guadalupe-Baez*, at 515 (1st Cir. 2016).

It is undisputed that Sergeant Cotter did not use force against the Plaintiff, and only Officer Reid deployed his taser against him. *See* SUMF, at ¶¶ 22, 58 – 59, 60, 63 – 64, 66 – 67, 69, 73, 80. Notwithstanding the lack of evidence to show Officer Reid engaged in a constitutional violation, nothing in the record establishes Sergeant Cotter knew or had reason to know that Officer Reid had a propensity to use excessive force. The Plaintiff cannot offer any evidence to suggest any such propensity. Indeed, Officer Reid did not have a "history of widespread abuse sufficient to alert a supervisor to ongoing violations." Therefore, to the extent the plaintiff alleges a supervisory liability claim based on deliberate indifference, his claim fails.

### C. Circuit Precedent Does Not Establish A Fourth Amendment Violation in which Police Officers Use a Taser Against an Individual Suspected of a Violent Offense and is Actively Resisting Arrest or Supervisory Liability for the Same.

Notwithstanding the lack of constitutional violation, Officer Reid and Sergeant Cotter are entitled to qualified immunity because it would not have been clear to every reasonable officer in his position that using the taser would violate the Plaintiff's rights.

To be clearly established, the contours of this right must have been "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard,* 134 S.Ct. 2012, 2023 (2014). As recently as the fall of 2021, the Supreme Court reversed the denial of qualified immunity in two Fourth Amendment excessive force cases. *See City of Tahlequah*, 142 S.Ct. 9; *Rivas-Villegas v. Cortesluna*, 142 S.Ct. 4 (2021). The Supreme Court stressed "specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *City of Tahlequah*, 142 S.Ct. at 12 (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam) (internal quotation marks omitted); *see also Rivas-Villegas*, 142 S.Ct. at 8 (same).

While the "clearly established" inquiry does not require a case directly on point, the Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality." *City of Tahlequah*, 142 S.Ct. at 11; *see also Hunt v. Massi,* 773 F.3d 361, 368 (1st Cir. 2014) (The qualified immunity analysis must include a consideration of the particularized facts of the case, not broad general propositions). The Supreme Court has further explained "[i]t is not enough that a rule be suggested by then-existing precedent;" rather, a "rule's contours must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *City of Tahlequah*, 142 S.Ct. at 11. In other words, "existing precedent must have placed the … constitutional question "beyond debate." *Rivas-Villegas*, 142 S.Ct. at 8. "The plaintiff bears the burden of demonstrating that the law was clearly established at the time of the alleged violation, and it is a heavy burden indeed." *Lachance v. Town of Charlton*, 990 F.3d 14, 20 (1st Cir. 2021) (quoting *Mitchell v. Miller*, 790 F.3d 73, 77 (1st Cir. 2015)).

Here, the Circuit precent was not so clearly established every reasonable officer in Officer Reid's position would have known that using the taser in the circumstances that he faced would violate the Plaintiff's rights. Indeed, a person's right – including people suffering from serious mental health issues – not to be tased while offering *stationary and non-violent* resistance to a lawful seizure was not clearly established at the time Officer Reid used the taser. *Estate of Armstrong ex rel. Armstrong v. Vill. of Pinehurst,* 810 F.3d at 909 (4th Cir. 2016).[5] In its decision, the Fourth Circuit recognized that the objective reasonableness of the use of tasers continues to pose difficult challenges to law enforcement agencies and courts alike. *Id.* The Court explained,

---

[5] To the extent the Plaintiff relies on *Gray v. Cummings,* 917 F.3d 1, 7 (1st Cir. 2019), that matter was decided after the incident at issue occurred. In the months following Gray, the First Circuit actually affirmed the judgment entered below in favor of the officer on the grounds that a reasonable officer in his position "could have determined that a single use of a taser at its lowest setting to quell a non-violent, mentally ill subject who was resisting arrest did not violate the Fourth Amendment." *Justiniano v. Walker*, 2019 WL 7169785, *7 (D. Mass. Dec. 24, 2019) (citing *Gray*, at 12).

"the law is still evolving is illustrated in cases granting qualified immunity for that very reason." *Id.*

*Estate of Armstrong*, involved a suit brought by the estate of a man who died after being Tased (with other force) with a stun gun during an involuntary commitment. The Fourth Circuit held that the use of an electric stun gun was excessive force, but that the officers were entitled to qualified immunity. Armstrong suffered from bipolar disorder and paranoid schizophrenia. He had been off his prescribed medication for five days and was poking holes through the skin on his leg "to let the air out." The police were called as soon as Armstrong fled the hospital, and three members of the department quickly responded. When the police arrived, Armstrong's commitment order had not yet been finalized. As soon as the officers learned that the commitment papers were complete, they surrounded and moved toward Armstrong. He reacted by sitting down and wrapping himself around a four-by- four post that was supporting a nearby stop sign. The officers tried to pry his arms and legs off of the post, but he was wrapped too tightly and would not move. An officer drew his Taser and announced that if Armstrong did not let go of the post, he would be Tased. That warning had no effect, so the officer deployed the Taser. The Tasing actually increased Armstrong's resistance, but eventually the officers successfully removed him from the post and laid him face down on the ground.

In granting the officers qualified immunity, the Fourth Circuit recognized case law that could be construed to sanction the officers' decision to use a Taser. Because Armstrong was not complying with the officers' commands, these cases negate the existence of any "consensus of cases of persuasive authority" across our sister circuits "such that a reasonable officer could not have believed that his actions were lawful." *Estate of Armstrong*, at 908-09. The *Estate of Armstrong* court recognized that the Eleventh Circuit held that the use of a Taser gun to effectuate

16

an arrest was reasonably proportionate to the difficult, tense and uncertain situation faced by a police officer when an arrestee used profanity, moved around and paced in agitation, yelled at the officer, and repeatedly refused to comply with verbal commands. *Draper v. Reynolds,* 369 F.3d at 1278. Moreover, the *Estate of Armstrong* court also recognized that the Sixth Circuit found that numerous cases from multiple circuits adhere to this line: "If a suspect actively resists arrest and refuses to be handcuffed, officers do not violate the Fourth Amendment by using a Taser to subdue him." *Hagans v. Franklin Cnty. Sheriff's Office*, 695 3d 505, 509 (6th Cir. 2012). The *Hagans* court provides examples in which the Sixth Circuit had held Tasing reasonable simply because "[t]he suspect refused to be handcuffed" or "the suspect ... refused to move his arms from under his body." *Id.* Other circuits, in short, have sometimes distinguished permissible and impermissible Tasing based on facts establishing bare noncompliance rather than facts establishing a risk of danger. *Estate of Armstrong*, at 908-09.

The present case involves a plaintiff who was suspected of a violent crime (assault) and actively resisted arrest in a series of ways, including threatening and disobeying officers. *See* SUMF, at ¶¶ 8 – 83. In the face of such resistance, courts conclude either that no constitutional violation occurred, or that the right not to be tased while resisting arrest was not clearly established at the time of the incident. *See Cloud v. Stone*, 993 F.3d 379, 384 (5th Cir. 2021) (Officer's nonlethal force—first tasing plaintiff from a few feet away, then using his taser in drive-stun mode while grappling with the plaintiff – did not violate plaintiff's Fourth Amendment right against excessive force during an arrest); *Cockrell v. City of Cincinnati*, 468 F. App'x 491, 495 (6th Cir. 2012) (Tasing of a "non-violent misdemeanant fleeing from the scene of a non-violent misdemeanor [jaywalking]" is not a violation of a clearly established right); *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) (holding in consolidated cases that Taser deployments did

not violate clearly established law, where one plaintiff, a pregnant woman pulled over for speeding, refused to sign citation, became agitated, screamed at officers, clung to steering wheel, and was Tased three times, and other plaintiff, also a woman, was shot with Taser in dart mode as she stood between officers and her large, drunken, aggressive husband who was under arrest); *McKenney v. Harrison,* 635 F.3d 354 (8th Cir. 2011) (holding that Taser deployment against misdemeanant who made sudden move toward window while being questioned by police and told not to "try anything stupid" did not constitute excessive force, even though misdemeanant fell out of window to his death after being Tased); *Carter v. City of Carlsbad*, 799 F.Supp.2d 1147 (S.D.Cal. 2011) (holding that use of Taser against large drunken male who "took an offensive fighting stance" did not violate clearly established law); *Beaver v. City of Federal Way*, 507 F.Supp.2d 1137 (W.D.Wash. 2007) (holding that, of five Taser deployments against suspect who fled scene of residential burglary and refused to obey command to stop, first three were not excessive uses of force, since officer had to make split-second decisions on how to subdue disobedient, fleeing felon, while last two constituted excessive force because suspect was no longer immediate threat; qualified immunity still was appropriate, however, because law was not clearly established).

The First Circuit's decision in *Parker v. Gerrish* is easily distinguishable from Officer Reid's use of the Taser. In *Parker*, the First Circuit found that a jury could have reasonably found that the plaintiff, who had one wrist handcuffed, was compliant and merely positioning his other wrist to be handcuffed when the defendant-officer shot him without warning with a Taser. *Parker v. Gerrish,* 547 F.3d at 9–10. Here, by contrast, it is undisputed that the Plaintiff was neither handcuffed nor partially handcuffed, nor compliant. Rather, he was actively resisting by refusing to give up his hands for handcuffing when Officer Reid deployed his Taser. Moreover, Sergeant

Cotter would have even less notice of an alleged constitutional violation than Officer Reid.

Accordingly, Officer Reid and Sergeant Cotter did not violate a clearly established right, and they should be granted qualified immunity.

## V.     CONCLUSION

WHEREFORE, the Defendants, Officer Nathan Reid and Sergeant Joseph Cotter, respectfully request this Honorable Court grant their Motion for Summary Judgment and enter judgment in their favor as to all of the Plaintiff's claims against them.

The Defendants,
OFFICER NATHAN REID;
SERGEANT JOSEPH COTTER; and
TOWN OF SANDWICH,
By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ Seth B. Barnett*
_____
Seth B. Barnett, BBO #661497
Katie Cooper Davis, BBO #694251
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
sbarnett@piercedavis.com
kdavis@piercedavis.com

Dated: January 31, 2022

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on January 31, 2022.

*/s/ Seth B. Barnett*
_____
Seth B. Barnett, Esq.